# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **SANAA L. ISKANDR, an individual;** | **8:17CV306** |
| **Plaintiff,** | |
| **vs.** | **MEMORANDUM** |
| **DOUGLAS COUNTY, NEBRASKA,** | **AND ORDER** |
| **Defendant.** | |

This matter is before the Court on the Motion for Summary Judgement, ECF No. 32, filed by Defendant Douglas County, Nebraska (the County) and the Motion to Strike, ECF No. 37, filed by Plaintiff Sanaa Iskandr. For the reasons stated below, the Motion for Summary Judgment will be granted and the Motion to Strike will be denied.[1]

## BACKGROUND

Unless otherwise indicated, the following facts are those stated in the parties' briefs supported by pinpoint citations to admissible evidence in the record, in compliance with NECivR 56.1[2] and Federal Rule of Civil Procedure 56.

---

[1] With respect to the handwritten notes from Iskandr's co-worker Mable King and King's son Denzel Hayes, ECF Nos. 33-8 and 33-10, the Motion to Strike the notes as hearsay is denied and the Court will consider the notes only for the nonhearsay purpose of the effect they had on Eric Carlson in making his decision to terminate Iskandr. The remainder of the Motion to Strike is denied as moot as the Court has not relied on any of the remaining evidence Iskandr sought to strike. It is noted that ECF Nos. 33-45 and 33-46 referred to by Iskandr in her Motion are references to ECF Nos. 33-44 and 33-35 based on Iskandr's description of the documents.

[2] *See* NECivR 56.1(b)(1):

> The party opposing a summary judgment motion should include in its brief a concise response to the moving party's statement of material facts. Each material fact in the response must be set forth in a separate numbered paragraph, must include pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other material upon which the opposing party relies, and, if applicable, must state the number of the paragraph in the movant's statement of material facts that is

Iskandr, an Egyptian woman, was employed by Douglas County in the Douglas County Mailroom (DCM) as a Mailroom Clerk I from August 2011, through July 27, 2016. The DCM is operated through the Douglas County Purchasing Department and its Purchasing Agent, Eric Carlson. Melissa Marchello was Iskandr's supervisor and Leeanne Derry filled in as acting supervisor when Marchello was not available. Derry Decl., ECF No. 33-46, Page ID 516.

On or about February 29, 2016, Iskandr requested and was granted leave under the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601. Her doctor released her to return to work on April 25, 2016, but strongly recommended she transfer to a different department because "her current department had caused her many health issues." Return to Work Note, ECF No. 33-39, Page ID 494.

On April 25, 2016, Iskandr met with HR director Karen Buche, Carlson, and another HR employee regarding the return-to-work letter. Iskandr informed the individuals at the meeting that she could not go back to work under the same circumstances. Iskandr EEOC letter 4/26/16, ECF No. 33-37, Page ID 485; Buche Decl., ECF No. 33-12, Page ID 207. Buche put Iskandr on paid administrative leave from April 25, 2016, until Buche could evaluate the situation, and provided Iskandr with an Employee Disability Accommodation Request Form (ADA Request Form) to fill out. Iskandr EEOC letter 4/26/16, ECF No. 33-37, Page ID 485.

On April 28, 2016, Iskandr submitted the ADA Request Form to Buche. ADA Request Form, ECF No. 33-35, Page ID 478. The ADA Request Form listed Iskandr's

disputed. <u>Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response.</u>

disability as job related stress disorder causing panic attacks; stated she had no specific accommodation request but was open to suggestions to eliminate the problem; stated she was having difficulty performing in her current job environment; and stated "I only want to be in [n]on stressful situation." *Id.* at 478-79.

On May 5, 2016, Iskandr filed a Charge of Discrimination with the Nebraska Equal Opportunity Commission. Charge of Discrimination, ECF No. 33-40, Page ID 500. On or about May 16, 2016, Iskandr returned to work in the DCM. At some time shortly before Iskandr's termination, Marchello told her not to speak Arabic because it disturbed Derry. Iskandr Dep., ECF No. 33-32, Page 408.

At some point in 2016, Employee Development and Relations Coordinator, Carol Donnelly, was assigned to investigate a hostile work environment complaint filed by Iskandr. Donnelly Decl., ECF No. 33-25, Page ID 338. On June 7, 2016, Donnelly concluded that there was no hostile work environment. Donnelly Decl., ECF No. 33-25, Page ID 339. Her report stated that "[t]here are ongoing and concerning behavioral issues within the [DCM]. . . . Each individual contributes to the current state of work environment; however, Ms. Marchello's lack of response to Ms. Iskandr's inappropriate behavior appears to be the single greatest factor." Donnelly Report, ECF No. 33-26, Page ID 355.

On June 2, 2016, Iskandr and her husband met with Buche, Carlson, and Connelly to discuss Iskandr's accommodation request and the note from Iskandr's doctor. 6/10/16 Letter to Iskandr, ECF No. 33-21, Page ID 332. During the meeting, the only potential accommodation identified was a transfer to a new department. Buche Decl., 33-12, Page ID 208. Buche told Iskandr that if she moved to a different department it would be at a lower salary, and that there was an office Buche could call. Iskandr Dep., ECF No. 33-

32, Page ID 398. Iskandr questioned Buche as to why Buche would want to move Iskandr to a different office with a lower salary. *Id.* Iskandr also told Buche "legally when I'm in a condition like that, I'm being hurt, you should transfer me to an office that will – I will get paid the same." *Id.* After the meeting, Buche sent Iskandr a correspondence stating "[i]n speaking with you last week, we reviewed the current job postings and found that none of the posted jobs matched your skills and/or personal requirements." 6/10/17 Iskandr Letter, ECF No. 33-21, Page ID 333. The letter provided the County's employment website and encouraged Iskandr to identify and apply for any job she was qualified to perform. *Id.* Iskandr applied for no other positions with the County.

On June 6, 2016, Iskandr was involved in a workplace incident,[3] involving her playing of music. Derry Decl., ECF No. 33-46, Page ID 517. According to King, the music interfered with employees' ability to hear each other and to hear the office radio, and King complained to Marchello. King Notes, ECF No 33-8, Page ID 197. Marchello asked Iskandr to turn the music down and she initially refused. Derry Decl., ECF No. 33-46, Page ID 517. Iskandr accused King of attempting to fight with her. After Marchello told Iskandr she could also hear the music, Iskandr disputed that Marchello could hear anything. King Notes, ECF No 33-8, Page ID 197. Later in the day, Iskandr left the office for approximately thirty-five minutes, and King was required to process outgoing mail alone. *Id.*

---

[3] Iskandr disputes the County's statement of the facts regarding the June 6, 2016, incident, but does not cite to any evidence to create a genuine issue of material fact. She also objects "to the multiple hearsay statements" included in the statement of facts regarding the June 6, 2016, incident. The information regarding the June 6, 2016, incident is offered for its effect on Carlson—that he believed Iskandr engaged in misconduct, not to prove the truth of the matter asserted—Iskandr's actual conduct. Thus, the Court has considered the evidence only for its effect on Carlson.

On June 9, 2016, Iskandr was involved in another workplace incident. She walked into the DCM and asked Hayes to move so she could put down her mail. Derry Notes, ECF No. 33-47, Page ID 519. Iskandr also demanded that Marchello move a book that remained on the table. *Id.* Marchello thought Iskandr was being rude and asked to speak with her in the hall to tell her such conduct was unacceptable. Marchello Email, ECF No. 33-9, Page ID 200. Iskandr became upset and yelled[4] at Marchello to stop putting pressure on her. *Id.*; Derry Notes, ECF No. 33-47, Page ID 520. King then left for the day due to the yelling. Derry Notes, ECF No. 33-47, Page ID 520. Marchello also left the DCM after receiving a call from HR. Iskandr left the office shortly thereafter. *Id.* Derry claims that Iskandr then returned and began screaming. *Id.* Although Iskandr disputes that she was screaming, she admits that her voice got louder due to an increase in anxiety and stated that "[t]hat doesn't mean I , I scream for myself or yell for myself, no. It's the illness that I start having increase with the depression and pressure that I have from the office." Iskandr Dep., ECF No. 33-32, Page ID 404. When Marchello returned from HR "everyone was standing in the hallway[]Sam from the dock called securit[y] because [Iskandr] was yelling and screaming." Marchello Email, ECF No. 33-9, Page ID 200.

Due to the incidents in the DCM on June 6, 2016, and June 9, 2016, Carlson placed Iskandr on paid administrative leave, so he could investigate the events. Carlson Decl., ECF No 33-1, Page ID 186. Disciplinary charges were brought against Iskandr. 7/13/16

---

[4] Iskandr disputes that she was yelling but cites to the investigation summary from June 7, 2016, two days before the incident, where Marchello describes a similar incident in which Iskandr raised her voice but did not yell. Thus, Iskandr has not demonstrated a genuine dispute of fact as to whether she was yelling. Iskandr also admits "that happened and increased when the work environment getting worse and worse. My anxiety getting increased and my voice getting loud." Iskandr Dep., ECF No. 33-23, Page ID 401. The distinction between whether Iskandr was yelling or raising her voice is not material.

Pre-Disciplinary Hearing Notice Letter, EFF No. 33-4, Page ID 193-94. Carlson sent Iskandr a letter on July 13, 2016, informing her of the charges and scheduled hearing. *Id.* A hearing was held on July 20, 2016, and Iskandr's employment was terminated on July 27, 2016. Termination Letter, ECF No. 33-5, Page ID 193. The reasons stated for her termination were 1) she had been insubordinate to her supervisor, 2) she failed to maintain satisfactory working relationships with the public or other employees, and 3) she used abusive or disgraceful language by making threats or creating a disturbance among co-workers or members of the public. *Id.* Carlson made the decision to terminate Iskandr after conducting his own investigation, in concert with the HR department. Carlson Decl., ECF No. 33-1, Page ID 186. Carlson spoke with Glen Moore, the Dock Foreman for the Omaha-Douglas Public Building Commission; Lisa Anderson, Senior Buyer for the Douglas County Purchasing Department; and Derry. *Id.* Carlson obtained written statements from King and her son Hayes. *Id.* at 188. Carlson also obtained Marchello's recollection of the events by email. *Id.* The email from Marchello and the handwritten notes from Hayes and King were part of the information relied upon by Carlson in making his decision. *Id.* at 186-88. Iskandr was 57-years-old at the time of her termination.

After her termination, Iskandr filed a Complaint alleging discrimination[5] based on her Egyptian national origin in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2; her age, in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623; and her disability, in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101. She also alleged retaliation in violation of the ADA, Title VII and the

---

[5] Despite stray references to state law, Iskandr's Complaint states that "Ms. Iskandr is not pursuing her state law claims in this case." Thus, the Court will not address any potential state law claims.

Family Medical Leave Act (FMLA), 29 U.S.C. § 2601. Specifically, Iskandr argues that she was discriminated against when she was placed on paid administrative leave and terminated.[6]

## STANDARD OF REVIEW

Iskandr incorrectly asserts that "Courts 'must be particularly deferential to the party opposing summary judgment' when liability depends on inferences rather than direct evidence." Pl.'s Br., ECF No. 39, Page ID 583 (quoting *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999), *abrogated by Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc)). In *Torgerson*, the Eighth Circuit stated that the "particularly deferential" standard of review that Iskandr advocates for is "unauthorized and should not be followed." 643 F.3d at 1043 (citing *Bell* with disapproval).

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 884 (8th Cir. 2016) (citing Fed. R. Civ. P. 56(c)). "Summary judgment is not disfavored and is designed for every action." *Briscoe v. Cty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (quoting *Torgerson*, 643 F.3d at

---

[6] Although Iskandr's Complaint lists numerous acts she claims were discriminatory in nature, in her brief, she does not cite to evidence in the record for many of these events and does not specifically argue these actions constituted harassment "sufficiently severe or persuasive to alter the conditions of [her] employment and create an abusive working environment." *See Clay v. Credit Bureau Enterprises, Inc.*, 754 F.3d 535, 540 (8th Cir. 2014) (citation omitted). Even if Iskandr argued that the actions referenced in her brief constituted a hostile work environment, the argument fails due to the nature of the actions and the absence of evidence that they were taken due to national origin, age, or protected conduct. Thus, the Court will consider only the discrete acts complained of by Iskandr, her paid administrative leave, and her termination.

1043).  In reviewing a motion for summary judgment, the Court will view "the record in the light most favorable to the nonmoving party . . . drawing all reasonable inferences in that party's favor."  *Whitney v. Guys, Inc.*, 826 F.3d 1074, 1076 (8th Cir. 2016) (citing *Hitt v. Harsco Corp.*, 356 F.3d 920, 923–24 (8th Cir. 2004)).  Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves."  *Se. Mo. Hosp. v. C.R. Bard, Inc.*, 642 F.3d 608, 618 (8th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  The moving party need not produce evidence showing "the absence of a genuine issue of material fact."  *Johnson v. Wheeling Mach. Prods.*, 779 F.3d 514, 517 (8th Cir. 2015) (quoting *Celotex*, 477 U.S. at 325).  Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case."  *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 596 (8th Cir. 2001) (quoting *Celotex*, 477 U.S. at 325).

In response to the moving party's showing, the nonmoving party's burden is to produce "specific facts sufficient to raise a genuine issue for trial."  *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016) (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012)).  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial."  *Wagner v. Gallup, Inc.*, 788 F.3d 877, 882 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1042).  "[T]here must be more than the mere existence of some alleged factual dispute" between the parties in order to overcome summary judgment.  *Dick v. Dickinson State Univ.*, 826

8

F.3d 1054, 1061 (8th Cir. 2016) (quoting *Vacca v. Viacom Broad. of Mo., Inc.*, 875 F.2d 1337, 1339 (8th Cir. 1989)).

In other words, in deciding "a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Wagner*, 788 F.3d at 882 (quoting *Torgerson*, 643 F.3d at 1042). Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," there is no "genuine issue of material fact" for trial and summary judgment is appropriate. *Whitney*, 826 F.3d at 1076 (quoting *Grage v. N. States Power Co.-Minn.*, 813 F.3d 1051, 1052 (8th Cir. 2015)).

## DISCUSSION

### I. National Origin Discrimination

Under Title VII, it is "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . national origin . . . ." 42 U.S.C. § 2000e-2(a). "An employee may establish unlawful employment discrimination through direct or indirect evidence." *Takele v. Mayo Clinic*, 576 F.3d 834, 838 (8th Cir. 2009) (citation omitted). Absent direct evidence of discrimination, Iskandr must satisfy the *McDonnell Douglas* burden-shifting framework by first establishing a prima facie case of discrimination. *Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 973 (8th Cir. 2012). Iskandr alleges both direct and indirect evidence of national origin discrimination.

### A. There is No Direct Evidence of National Origin Discrimination

"[D]irect evidence is evidence 'showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated' the adverse employment action." *Guimaraes*, 674 F.3d at 972 (quoting *Thomas v. First Nat'l Bank of Wynne,* 111 F.3d 64, 66 (8th Cir.1997)). "Direct evidence is distinguished from 'stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process.'" *Elam v. Regions Fin. Corp.*, 601 F.3d 873, 878 (8th Cir. 2010) (quoting *Clearwater v. Indep. Sch. Dist. No. 166,* 231 F.3d 1122, 1126 (8th Cir.2000)). "Direct evidence does not include statements . . . that are facially and contextually neutral." *Torgerson*, 643 F.3d at 1045.

Iskandr argues that she has presented two separate instances which constitute direct evidence of discrimination based on national origin. First, she alleges King shouted at her because she raised her arms in front of King when putting items on a shelf. When Marchello became involved, she instructed Iskandr not to report the incident to Human Resources (HR), but King went to HR and reported her version of the events. Iskandr Dep., ECF No. 33-32, Page ID 389-90. Iskandr cites no comments made by King or Marchello during this event that suggest Iskandr's nationality influenced King's or Marchello's behavior or that their actions demonstrated discriminatory animus. These facts do not constitute direct evidence of national origin discrimination as they are facially and contextually neutral.

Second, at her deposition, Iskandr testified that her supervisor, Marchello, told her not to speak Arabic because that disturbed Derry.[7] Iskandr Dep., ECF No. 33-32, Page ID 408. Yet Iskandr does not allege that she was terminated for speaking Arabic nor does she allege that Marchello made the decision to terminate her employment or place her on leave. Iskandr does not dispute that Carlson made the ultimate decision to terminate her employment. The alleged request that Iskandr not speak Arabic was a comment by a nondecisonmaker, not direct evidence of discrimination.[8]

### B. There is No Indirect Evidence of National Origin Discrimination

To establish a prima facie case under the *McDonnell Douglas* burden-shifting framework, Iskandr must show she "(1) is a member of a protected group; (2) was meeting the legitimate expectations of the employer; (3) suffered an adverse employment action; and (4) [suffered] under circumstances permitting an inference of discrimination." *Bunch v. Univ. of Ark. Bd. of Trs.*, 863 F.3d 1062, 1068 (8th Cir. 2017) (quoting *Moody v. Vozel*, 771 F.3d 1093, 1096 (8th Cir. 2014)). If Iskandr satisfies the prima facie case, the burden shifts to the County to provide a "legitimate, non-discriminatory justification for its adverse employment action." *Id.* (quoting *Moody*, 771 F.3d at 1096). If the County meets this

---

[7] Iskandr also alleges that Derry told her to stop speaking Arabic. Pl. Opp'n Br., ECF No. 39, Page ID 605. However, Iskandr provides no citation to any evidence in support of this assertion of fact and even if she had, like Marchello, Derry was not a decisionmaker. *See* NECivR 56.1(b)(1).

[8] The Court recognizes that an employer may be liable on a "cat's paw" theory when a decisionmaker merely serves "as a conduit, vehicle or rubber stamp" for a supervisor harboring discriminatory animus. *Ludlow v. BNSF Ry. Co.,* 788 F.3d 794, 801–02 (8th Cir. 2015) (quoting *Qamhiyah v. Iowa State University of Science and Technology,* 566 F.3d 733, 742 (8th Cir. 2009)). Liability on a "cat's paw" theory has been found where an independent investigation relies on facts provided by the biased supervisor essentially delegating the factfinding portion of the investigation to the biased supervisor. *Id.* Iskandr does not argue this theory and contends that Carlson did not rely on statements of other employees: "Plainly, he did not consider the assessment by Ms. Iskandr's own supervisor." Pl. Br. ECF No. 39, Page ID 600.

burden, Iskandr must "prove [the County's] justification is a mere pretext for discrimination." *Id.* (quoting *Moody*, 771 F.3d at 1096).

<u>*1. Iskandr has not established a prima facie case of discrimination.*</u>

The County argues that Iskandr's paid administrative leave does not constitute an adverse employment action and Iskandr is unable to demonstrate that the circumstances surrounding her discharge permit an inference of discrimination.

An employer's act of putting an employee on paid leave does not qualify as an adverse employment action where employee maintains her pay and benefits. *See Singletary v. Missouri Dep't. of Corr.*, 423 F.3d 886, 891–92 (8th Cir. 2005) (holding the employer's act of putting an employee on administrative leave pending an investigation did not qualify as an adverse employment action for purposes of a Title VII claim where the employee maintained his pay, grade, and benefits during his leave, and was restored to his position promptly after the investigation concluded). Iskandr was placed on leave by Buche on April 25, 2016, to avoid sending her back to work in the DCM until HR could complete an investigation into the environment Iskandr claimed had caused her health issues. Buche Decl., ECF No. 33-12, Page ID 207; Iskandr EEOC letter 4/26/16, ECF No. 33-37, Page ID 485. Iskandr received full pay and benefits during the administrative leave period. Buche Decl., ECF No. 33-12, Page ID 207. Thus, the administrative leave did not constitute an adverse employment action and the only adverse employment action Iskandr suffered was her termination.

The remaining question is whether Iskandr was terminated under circumstances permitting an inference of discrimination. The County argues that Iskandr has not established a prima facie case of discrimination because she has not shown that similarly

situated employees in the DCM were treated differently. Iskandr's brief states "[f]or purposes of the summary judgment analysis, the court will presume Ms. Iskandr's evidence established a prima facie case, 'thus creating a rebuttable presumption of discrimination.'" Pl. Br., ECF No 39, Page ID 606 (quoting *Rose-Maston v. NME Hospitals, Inc.*, 133 F.3d 1104, 1107 (8th Cir. 1988)). The Court declines Iskandr's invitation to presume she has met her burden of establishing a prima facie case of national origin discrimination and the evidence presented demonstrates that she cannot meet this low burden.

The prima facie showing is a "flexible evidentiary standard" and a plaintiff can satisfy the causation element "in a variety of ways, such as by showing more favorable treatment of similarly situated employees who are not in the protected class, or biased comments by a decisionmaker." *Guimaraes*, 674 F.3d at 974 (citing *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1019 (8th Cir. 2011)). Iskandr does not cite to any evidence showing that any other employees engaged in the type of conduct she is alleged to have engaged in on June 6 and 9, 2016, and received more lenient treatment. She does cite to the investigation that was completed by Douglas County HR department which noted "ongoing behavioral issues within the Mailroom" and stated that "[e]ach individual contributes to the current state of work environment." Investigation Summary, ECF No. 33-26, Page ID 341. The investigation summary referenced by Iskandr is dated June 7, 2016, before at least one of the incidents leading to her termination, and does not demonstrate that any individual engaged in conduct similar to that which led to her termination. Accordingly, she has not established a prima facie case of age or national origin discrimination.

*2. The County has articulated a legitimate nondiscriminatory reason for Iskandr's termination.*

Even if Iskandr had established a prima facie case of discrimination, the County articulated a legitimate nondiscriminatory reason for her termination. The Eighth Circuit has "consistently held that violating a company policy is a legitimate, non-discriminatory rationale for terminating an employee." *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 925 (8th Cir. 2006) (citations omitted). Employee misconduct is also generally found to be a legitimate, non-discriminatory basis for termination, even when the employer relied on another employee's account of the misconduct. *See Blackwell v. Alliant Techsystems, Inc.,* 822 F.3d 431, 436 (8th Cir. 2016).

Carlson terminated Iskandr because he believed she 1) was insubordinate to her supervisor, 2) failed to maintain satisfactory working relationships with the public or other employees, and 3) used abusive or disgraceful language make threats or created a disturbance among co-workers or members of the public. Termination Letter, ECF No. 33-5, Page ID 193. The County policy manual listed thirty-three causes for disciplinary action, including insubordination toward a supervisor; failure to maintain satisfactory working relationships with the public or employees; abusive or disgraceful language; and making threats or creating a disturbance among co-workers or the public. The County articulated a legitimate nondiscriminatory reason for Iskandr's termination, consistent with its published policies.

*3. Iskandr has not demonstrated the County's reason for her termination was pretext for discrimination.*

A plaintiff may show pretext by demonstrating that the employer's proffered reason for the adverse employment action had no basis in fact. *E.E.O.C. v. Wal-Mart Stores, Inc.*, 477 F.3d 561, 570 (8th Cir. 2007). "[T]he critical inquiry in discrimination cases like this one is not whether the employee actually engaged in the conduct for which he was terminated, but whether the employer in good faith believed that the employee was guilty of the conduct justifying discharge." *Blackwell*, 822 F.3d at 436 (8th Cir. 2016) (quoting *McCullough v. Univ. of Ark. for Med. Scis.,* 559 F.3d 855, 861–62 (8th Cir.2009)). Iskandr attempts to demonstrate pretext by arguing she was not insubordinate, maintained good work relationships, and did not create a disturbance. She cites to her own testimony as well as the June 7, 2016, investigation report where Marchello does not refer to Iskandr as insubordinate; says Iskandr did not scream during a separate incident involving King; and characterizes complaints about Iskandr as minor, not bad, and not very many. Neither the June 7, 2016, investigation report nor Iskandr's testimony demonstrate that Carlson lacked a good faith belief that Iskandr engaged in the conduct for which she was terminated.

A plaintiff may also show pretext by demonstrating that an employer failed to follow its policies or treated similarly-situated employees in a disparate manner. *E.E.O.C. v. Prod. Fabricators Inc.*, 763 F.3d 963, 970 (8th Cir. 2014) (citing *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010)). Although Iskandr alleges she was the only Egyptian employee, she fails to demonstrate that any similarly-situated employees outside the protected class engaged in conduct of comparable seriousness and were treated more favorably. Thus, she has failed to demonstrate that the County's reasons for terminating her were pretext for age or national origin discrimination.

## II. Age Discrimination

"The ADEA makes it 'unlawful for an employer to . . . discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's age.'" *Onyiah v. St. Cloud State Univ.*, 684 F.3d 711, 719 (8th Cir. 2012) (quoting 29 U.S.C. § 623(a)(1)). Absent direct evidence of discrimination, Iskandr must satisfy the *McDonnell Douglas* burden-shifting framework. *Tusing v. Des Moines Indep. Cmty. Sch. Dist.*, 639 F.3d 507, 515 (8th Cir. 2011). Iskandr cites no direct evidence of age discrimination. With respect to indirect evidence, Iskandr states that she was 57-years-old at the time of her termination, thus belonging to the protected category, and was the only employee terminated. Yet she provides no evidence that similarly situated younger employees were treated more favorably. As stated with respect to national origin discrimination, the County has articulated a legitimate nondiscriminatory reason for her termination and she has failed to demonstrate pretext.

## III. ADA Claims[9]

To establish a prima facie wrongful-termination claim under the ADA, Iskandr must show she "(1) is disabled within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) suffered an adverse employment action because of her disability." *Walz v. Ameriprise Financial, Inc.*, 779 F.3d 842, 845 (8th Cir. 2015) (citing *Kallail v. Alliant Energy Corporate Servs., Inc.*, 691 F.3d 925, 930 (8th Cir. 2012)).

Iskandr argues that although the County alleges her misconduct was the basis for her termination it ignores the fact that her "breakdowns on June 6 and June 9, 2016" were

---

[9] Iskandr's Complaint sets forth two separate ADA claims, one based on disability and one based on Iskandr having a record of disability. The Court will analyze them together.

"evidence of stress, distress, and reaction to the workplace environment." Pl. Br., ECF No. 39, Page ID 606. The County argues that Iskandr was not a qualified individual under the ADA, that the County had a legitimate nondiscriminatory reason for terminating her, and she has failed to demonstrate pretext. The Court agrees that Iskandr is not a qualified individual under the ADA.

"Whether an individual is qualified within the meaning of the ADA is determined by applying a two-part test." *Walz,* 779 F.3d at 845. (citing *EEOC v. Wal-Mart Stores, Inc.*, 477 F.3d 561, 568-69 (8th Cir. 2007)). The first part is whether Iskandr "possesses the requisite skills, education, certification or experience necessary for the job," and the second part is whether Iskandr "can, despite [her] impairments, perform the essential functions of the job either with or without reasonable accommodation." *Id.* Iskandr was a longtime employee of the DCM, and the record does not indicate that she lacked any credentials for her employment. Accordingly, the analysis hinges on whether Iskandr could perform the essential functions of her position with or without reasonable accommodation.

"Essential functions are 'the fundamental job duties of the employment position.'" *Id.* (quoting *Mortiz v. Frontier Airlines, Inc.*, 147 F.3d 784, 787 (8th Cir. 1998)). "The term 'essential functions' does not include the marginal functions of the position." *Id.* (quoting *Mortiz*, 147 F.3d at 787). Here, Iskandr failed to establish a genuine issue of material fact as to whether she could perform the essential functions of her position with or without reasonable accommodation. She does not dispute that as a Mailroom Clerk I she was required to have a significant number of interactions with co-workers, supervisors, other County and City employees, and the public. Carlson Decl., ECF No. 33-1, Page ID 186.

17

The Mailroom Clerk I position description includes "[a]bility to establish and maintain effective working relationships with supervisors, fellow workers, and the general public." Position Description, ECF No. 33-14, Page ID 319.

The record in this case shows the County had reason to find Iskandr was insubordinate, failed to maintain satisfactory relationships with co-workers, and created a disturbance among co-workers. Although Iskandr contends that she was not insubordinate, followed all polices, and did not yell; the undisputed evidence regarding the June 9, 2016, incident shows that she raised her voice, had difficulty getting along with employees and supervisors in the DCM, and security was called to the DCM as a result. Accordingly, Iskandr's behavior prevented her from engaging in appropriate interactions and maintaining effective working relationships with co-workers and supervisors in the DCM—an essential function of her position. Therefore, Iskandr cannot make a sufficient showing that she was able to perform the essential functions of her position without an accommodation.

Iskandr nonetheless may be qualified under the ADA if a reasonable accommodation would have allowed her to perform the essential functions of her position and the County failed to provide the accommodation. To establish a failure to accommodate claim, an employee must show that "the employee could have been reasonably accommodated but for the employer's lack of good faith." *Cravens v. Blue Cross and Blue Shield of Kansas City*, 214 F.3d 1011, 1021, (8th Cir. 2000) (citing *Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 952 (8th Cir. 1999). When considering reassignment as a reasonable accommodation, the employee must be seeking an existing position within the company, "the employer is not required to create a new

18

position as an accommodation." *Id.* at 1019 (citing *Benson v. Nw. Airlines, Inc.*, 62 F.3d 1108, 1114 (8th Cir. 1995)). Additionally, the existing position must be vacant, and the employee must be otherwise qualified for the reassignment position. *Id.* (citations omitted). Iskandr has identified no accommodation, aside from reassignment to another position, that would have alleviated her behavioral issues caused by stress in the workplace. With respect to reassignment, Iskandr has identified no vacant positions for which she was qualified and to which she could have been reassigned. In fact, Iskandr's brief states that "Buche was well aware that there were no 'other' jobs available within Douglas County." ECF No. 39, Page ID 596. Thus, Iskandr has not made a sufficient showing that she was qualified to perform the essential functions of her position with or without a reasonable accommodation, and her ADA claims will be dismissed.

### IV. ADA and Title VII Retaliation Claims

Retaliation claims under the ADA and Title VII follow the same direct evidence or burden-shifting analysis employed in discrimination claims. *Oehmke v. Medtronic, Inc.*, 844 F.3d 748, 758 (8th Cir. 2016) (citing *EEOC v. Prod. Fabricators, Inc.,* 763 F.3d 963, 972 (8th Cir. 2014)) (ADA); *Pye*, 641 F.3d at 1020 (Title VII). Iskandr has not presented any direct evidence of retaliation, thus, the *McDonnell Douglas* framework applies.

Requesting an accommodation is a protected activity, *Heisler v. Metro. Council*, 339 F.3d 622, 632 (8th Cir. 2003), as is filing a Title VII charge of discrimination, 42 U.S.C. § 2000e-3. Thus, causation is the only disputed element.

Iskandr's only evidence of causation is the temporal proximity. The cases that have accepted temporal proximity alone as sufficient to create an inference of a causal link have uniformly held that the temporal proximity must be "very close." *Wallace v. Sparks*

*Health Sys.*, 415 F.3d 853, 859 (8th Cir. 2005) (quoting *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273 (2001)). However, "[t]emporal proximity alone is insufficient to show that an employer's proffered reason for action was a pretext for discrimination." *Kelleher v. Wal-Mart Stores, Inc.*, 817 F.3d 624, 633–34 (8th Cir. 2016) (citing *Gibson v. Geithner,* 776 F.3d 536, 541 (8th Cir.2015)).

Iskandr requested accommodations on April 26, 2016. ADA Request Form, ECF No. 33-35, Page ID 478. On May 5, 2016, Iskandr filed a Charge of Discrimination with the Nebraska Equal Opportunity Commission. Charge of Discrimination, ECF No. 33-40, Page ID 500. Iskandr was put on paid administrative leave on June 10, 2016, after a workplace incident. A subsequent investigation ultimately led to her termination.

Even assuming Iskandr has met her burden to prove a prima facie case of retaliation based solely on temporal proximity, Douglas County articulated a legitimate non-retaliatory reason for her termination. With temporal proximity alone to support her argument for pretext, Iskandr's retaliation claims under ADA and Title VII fail.

## V. FMLA Retaliation Claim

The FMLA entitles an eligible employee to twelve weeks of unpaid leave during any twelve-month period if she has a serious health condition that makes her unable to perform the functions of her position. 29 U.S.C. § 2612(a)(1)(D). Iskandr does not allege that the County restrained her from using FMLA leave or denied her any benefit to which she was entitled under the FMLA. Instead, she claims Douglas County interfered with her FMLA rights in violation of 29 U.S.C. § 2615(a) by discriminating against her for exercising those rights. Specifically, she alleges that after she took FMLA leave on February 29, 2016, she was put on administrative leave on April 25, 2016, when her doctor authorized

her to return to work. After Iskandr returned to work on May 16, 2016, she was put on paid administrative leave a second time on June 10, 2016, after a workplace incident. A subsequent investigation ultimately led to her termination.

FMLA retaliation claims are reviewed for direct evidence or under *McDonnell Douglas. Naguib v. Trimark Hotel Corp.*, 903 F.3d 806, 812–13 (8th Cir. 2018) (citing *Massey-Diez v. Univ. of Iowa Cmty. Med. Servs., Inc.*, 826 F.3d 1149, 1160 (8th Cir. 2016)). Iskandr has not provided any direct evidence that she was fired because she took FMLA leave. Analyzing her claim under *McDonnell Douglas*, the only evidence that her termination was causally linked to her protected conduct is temporal proximity. In the context of a claim for FMLA retaliation, the Court "looks to the date an employer knew of an employee's use (or planned use) of FMLA leave, not the date it ended." *Sisk v. Picture People, Inc.*, 669 F.3d 896, 900 (8th Cir. 2012) (citing *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 833 (8th Cir. 2002)). "[M]ore than two months is too long to support a finding of causation without something more." *Id.* (citations omitted). Thus, Iskandr has failed to present a prima facie case of FLMA retaliation and her claim will be denied.

Further, as stated *supra*, even if Iskandr could present a prima facie case of FMLA retaliation, the County has articulated a legitimate nondiscriminatory reason for her termination and Iskandr has failed to demonstrate pretext.

Accordingly,

IT IS ORDERED:

1. The Motion for Summary Judgment, ECF No. 32, filed by Defendant Douglas County, Nebraska, is granted;

2.  The Motion to Strike, ECF No. 37, filed by Plaintiff Sanaa Iskandr is denied;

3.  The above-captioned matter is dismissed, with prejudice;

4.  The parties will bear their own attorney fees and costs; and

5.  A separate judgment will be entered.

Dated this 10th day of May 2019.

BY THE COURT:

s/Laurie Smith Camp
Senior United States District Judge